UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| MONET GRAY,<br><br>         Plaintiff,<br><br>   -against-<br><br>VALENTINO U.S.A., INC.,<br><br>         Defendant. | **COMPLAINT**<br><br>Civil Case No.:<br><br>**JURY TRIAL DEMANDED** |

  Plaintiff MONET GRAY ("Plaintiff" or "Ms. Gray"), by and through her attorneys, JOSEPH & NORINSBERG, LLC, as and for her Complaint against VALENTINO U.S.A., INC. ("Defendant" or "Valentino"), alleges upon knowledge as to herself and her own actions, and upon information and belief as to all other matters, as follows:

## NATURE OF THE CASE

  1. This is a civil action for damages and equitable relief based upon the willful violations that Defendant committed of Plaintiff's rights guaranteed to her by: (i) the anti-discrimination and anti-retaliation provisions of 42 U.S.C. § 1981 ("Section 1981"); (ii) the anti-discrimination and anti-retaliation provisions of the New York State Human Rights Law ("NYSHRL"); (iii) the anti-discrimination and anti-retaliation provisions of the York City Human Rights Law ("NYCHRL"); and (iv) any other violations that can be inferred from the facts set forth herein.

## PRELIMINARY STATEMENT

  2. This case exposes the reprehensible underbelly of corporate America, where racial animus festers beneath a veneer of professionalism and achievement.

1

3. Plaintiff, a Black female who ascended to Store Manager through exceptional performance and dedication, endured years of vicious racial discrimination while simultaneously delivering award-winning results for Defendant.

4. The discrimination reached unconscionable depths when the Director of Outlet Division repeatedly and casually deployed the most vile racial epithet—"***Nigger***"—during professional communications, reducing Plaintiff to a racial stereotype rather than recognizing her as the accomplished professional she demonstrably was.

5. On February 14, 2025, Plaintiff formally reported Eliza Rodriguez's discriminatory conduct, including abuse of managerial power and theft of merchandise, to Hannah Lee, VP of HR. The complaint detailed instances of racial discrimination, with Rodriguez explicitly stating Plaintiff was chosen for assignments because of her race, leading Plaintiff to express fear for her safety given Rodriguez's influence within the organization.

6. Ms. Lee acknowledged receipt of the complaint the same day and assured Plaintiff of processing the information transparently to determine appropriate next steps. However, over the following six days, Rodriguez retaliated against Plaintiff by persistently harassing her in an attempt to silence her complaint, including aggressive attempts to communicate and showing up at Plaintiff's house.

7. When Plaintiff met with Ms. Lee on February 19, 2025, expressing safety concerns and objections to Rodriguez's oversight during the investigation, Ms. Lee dismissed Plaintiff's fears and directed her to report to work. Due to the failure of the organization to conduct a thorough investigation and provide adequate remedial measures, Plaintiff felt compelled to resign on February 20, 2025. Subsequent communication with Ms. Lee revealed a focus solely on investigating Rodriguez's abuse of power and theft, prompting Plaintiff to document further

discrimination endured, including Rodriguez's use of racial slurs, and follow-up with Ms. Lee regarding the discriminatory conduct towards her and another colleague, Ms. Semper.

8. Defendant's actions and deliberate inaction constitute flagrant violations of Section 1981, the NYSHRL, and the NYCHRL, which collectively prohibit race-based discrimination.

9. The law demands accountability for such unconscionable conduct, and Plaintiff now seeks the justice that Defendant callously denied her.

## JURISDICTION AND VENUE

10. This Court has jurisdiction over this action pursuant to 28 U.S.C. § 1331, as this action arises under 42 U.S.C. § 1981 *et seq*. The supplemental jurisdiction of the Court is invoked pursuant to 28 U.S.C. § 1367 over all claims arising under New York law.

11. Venue is appropriate in this Court pursuant to 28 U.S.C. § 1391(b)(2) as a substantial part of the events or omissions giving rise to the claims for relief occurred in this judicial district.

## PARTIES

### *Plaintiff Monet Gray*

12. At all relevant times herein, Monet Gray was and is a resident of Orange County located in the State of New York.

13. At all relevant times herein, Plaintiff worked for Defendant in New York and was an "employee" entitled to the protections as defined by Section 1981, NYSHRL, and the NYCHRL.

### *Defendant Valentino U.S.A., Inc.*

14. At all relevant times herein, Valentino U.S.A., Inc., was and is a foreign corporation duly authorized to conduct business in the State of New York.

15. Valentino has a principal place of business located at 11 West 42nd Street, 26th Floor New York, NY 10036.

16. At all relevant times herein Defendant employs more than 100 employees.

17. At all relevant times herein, Defendant controlled the terms and conditions of Plaintiff's employment and is a "person" and an "employer" within the meaning of Section 1981, the NYSHRL, and the NYCHRL.

## BACKGROUND FACTS

18. Plaintiff, a Black female, commenced her employment with Defendant on June 6, 2013, as a Full-time Client Advisor.

19. Throughout her tenure, Plaintiff held various positions within the company, including Operations (April 1, 2016), Selling Supervisor (December 1, 2016), and ultimately Store Manager (April 1, 2018 to February 19, 2025).

### *Impact and Accomplishments*

20. In 2020, Defendant formally recognized Plaintiff's superior management skills by presenting her with an award specifically acknowledging her exceptional leadership abilities.

21. From 2021-2022, Plaintiff's leadership yielded prestigious recognition when her team secured the award for highest Units Per Transaction ("UPT") in North America, establishing Plaintiff as an elite performer within Defendant's continental operations.

22. This award represents industry-wide acknowledgment of Plaintiff's exceptional ability to maximize sales efficiency and customer engagement despite the discriminatory environment fostered by Ms. Rodriguez.

23. Plaintiff demonstrated remarkable versatility and operational excellence from 2021-2024, successfully managing the Woodbury location remotely while simultaneously traveling extensively to support other store locations throughout Defendant's network.

24. Under Plaintiff's leadership, the Woodbury location consistently met or exceeded its monthly targets despite her divided attention and the hostile work conditions.

25. Specifically, Plaintiff provided critical management support at multiple locations including Atlanta (May 2021-January 2022 and February-March 2022), Soho (June 2022), Hamptons (August 2022), Central Valley (August 2022-January 2023), Manhasset (September/October 2023), New Madison (November 8, 2023), and the New Soho Store (February-March 2024).

26. During these assignments, Plaintiff maintained impeccable professional standards, with no discrepancies or theft occurring under her management.

27. Throughout her employment with Defendant, Plaintiff earned widespread respect across the organization for her leadership capabilities.

28. Defendant repeatedly entrusted Plaintiff with training other employees and relied upon her to elevate overall morale across the network.

29. This trust manifested in Plaintiff's regular assignments to support and train staff at various locations, including her responsibility for training the team and new store Director during the New Soho Store opening in February-March 2024, all while continuing to manage the Woodbury location.

30. Plaintiff's consistent selection for these critical assignments demonstrates Defendant's recognition of her exceptional capabilities, making the discriminatory treatment she endured all the more egregious.

31. In 2024, Plaintiff demonstrated remarkable business acumen by guiding her team to exceed their annual budget target a full three weeks ahead of schedule.

32. This extraordinary achievement occurred while simultaneously meeting all Key Performance Indicators and metrics, culminating in a substantial 25% increase in the overall budget.

33. This accomplishment stands as compelling evidence of Plaintiff's superior management capabilities even while facing ongoing discrimination.

*Hostile Work Environment*

34. In November 2020, Plaintiff first encountered Eliza Rodriguez's ("Rodriguez") overt racial animus when she heard the Director of Outlet Division use the racial slur "***Nigger***" while speaking to another corporate official on the phone during inventory preparation.

35. This egregious incident occurred in full view of Plaintiff and other team members, establishing the beginning of a persistent pattern of racial hostility that would pervade Plaintiff's remaining years at Defendant.

36. Rodriguez, a woman of Puerto Rican descent with significant organizational influence, earned a reputation throughout the retail industry for expressing her opinions candidly, often in a manner perceived as disrespectful.

37. From May 2021 to January 1, 2022, Defendant dispatched Plaintiff to Atlanta, Georgia, ostensibly to provide temporary management support.

38. Upon Plaintiff's return to New York, Rodriguez revealed the discriminatory basis for this assignment, explicitly stating to Plaintiff: "You were chosen to go to Atlanta solely because you are Black and can relate to the team members. You can handle this type of poor behavior."

39. Rodriguez intensified this racial stereotyping by openly recounting to Plaintiff how she and senior management had made derogatory jokes about Black individuals eating fried chicken in Atlanta during a Managers' meeting.

40. Defendant subsequently sent Plaintiff back to Atlanta in February-March 2022 to train the new Store Manager, further exploiting her race as a qualification for the assignment.

***Defendant Ratifies Rodriguez's Discriminatory Conduct***

41. Between January 2023 and January 2025, Rodriguez systematically subjected Plaintiff to racial harassment during regular business communications.

42. Rodriguez conducted one to two team calls or three-way phone conversations each month with Chantel and Plaintiff to discuss business matters.

43. During these professional discussions concerning network events, Rodriguez frequently used the N-word when referring to Defendant's employees.

44. Chantel Semper ("Ms. Semper"), an African American Store Manager who reported to Rodriguez, witnessed discriminatory comments made by Rodriguez to Plaintiff.

45. Ms. Semper also observed that, during regularly scheduled team calls focused on budget discussions, Rodriguez frequently used offensive language when referring to African American colleagues and other employees of Defendant.

46. In July 2024, Rodriguez escalated her discriminatory behavior during a phone call with Plaintiff about pricing issues for new merchandise.

47. While Plaintiff processed a delivery with the call on speakerphone, Rodriguez launched into a racially charged tirade targeting the merchandising team.

48. Rodriguez claimed that it was understandable why Adrian hired Avery, using the N-word to describe him, suggesting Avery was quiet and easy to control.

7

49. Two employees present with Plaintiff, Kathleen Riley ("Ms. Riley") and Priya Pierce ("Ms. Pierce"), witnessed this incident.

50. Ms. Riley, a full-time Client Advisor known for her intelligence, empathy, hardworking nature, genuine demeanor, and leadership qualities, and Ms. Pierce, recognized for her zero-tolerance stance on disrespect, both heard Rodriguez make these discriminatory remarks.

51. Rodriguez's racial hostility extended beyond these incidents.

52. Judy Park, Director of Operations, witnessed Rodriguez making discriminatory remarks and using offensive language, including the N-word, during a phone conversation.

53. On two separate occasions, Plaintiff overheard these exchanges when Rodriguez mentioned she was anticipating a call from Judy Park while at the Woodbury location.

54. In November 2024, during a New York sample sale—a biannual event Plaintiff had participated in regularly for the previous three years—Rodriguez publicly humiliated Plaintiff at lunch.

55. As Plaintiff brought food close to her face to check whether it was spoiled, Rodriguez immediately chastised her by derogatorily instructing her not to behave like an N-word.

56. This degrading remark demonstrates Rodriguez's persistent reduction of Plaintiff to racial stereotypes, rather than acknowledging her professional achievements.

*<u>Rodriguez Retaliates against Plaintiff Resulting in her Constructive Discharge</u>*

57. On February 14, 2025, at 6:47 AM, Plaintiff formally reported Rodriguez's discriminatory conduct to Hannah Lee ("Ms. Lee"), VP of HR.

58. In her formal complaint, Plaintiff also reported Rodriguez's pattern of abusing her managerial power and stealing merchandise from Valentino stores.

8

59. Critically, Plaintiff specifically articulated the racial discrimination she experienced, stating: "Eliza told me after I completed my assignment that I was chosen to go to Atlanta, only because I was Black and could relate to the team. I could handle the poor behavior from the associates."

60. Plaintiff expressed legitimate fear for her safety, noting "please consider my safety" given Rodriguez's influence within the organization and her behavior "when under stress or in desperate circumstances."

61. Ms. Lee acknowledged receipt of Plaintiff's complaint at 7:11 AM the same day, writing: "I can imagine that this was very difficult and required much courage."

62. Ms. Lee assured Plaintiff she would "process the information to determine the appropriate next steps" and recognized Plaintiff's "request for discretion and concern on how this will impact you."

63. Ms. Lee promised transparency, stating: "I will not act without sharing with you first, my planned actions."

64. That same day and persistently over the course of six (6) days, Rodriguez subjected Plaintiff to continued harassment in an effort to silence her complaint.

65. Specifically, Rodriguez made repeated aggressive attempts to communicate with Plaintiff which included showing up at her house on two different days following Plaintiff's complaint.

66. On Wednesday, February 19, 2025, Plaintiff met with Ms. Lee and reported Rodriguez's attempts to communicate with her since the complaint. Specifically, Plaintiff told Ms. Lee that she feared for her safety and raised serious concerns about Rodriguez continued oversight of her store during the investigation.

67. However, Ms. Lee dismissed Plaintiff's concerns and directed her to report to work.

68. That same day, Rodriguez showed up at Plaintiff's store and began aggressively demanding for her step out of the store to speak to her. When Plaintiff refused, Rodriguez threatened that this would not end well for Plaintiff.

69. Faced with Defendant's failure to conduct a thorough investigation and take adequate remedial measures, Plaintiff felt compelled to tender her resignation on February 20, 2025.

***Defendant turns a blind eye to Plaintiff's Complaint of Discrimination***

70. Following her resignation, Ms. Lee continued to communicate with Plaintiff requesting her continued cooperation with the investigation. Further, Ms. Lee assured Plaintiff that she would be transparent on the status of the investigation.

71. Soon after agreeing to cooperate with the investigation, Plaintiff noticed that Ms. Lee was only interested in investigating allegations concerning Rodriguez's abuse of power and theft of merchandise.

72. On February 27, 2025, Ms. Lee informed Plaintiff that the results of the investigation were confidential and thanked her for her partnership.

73. That same day, Plaintiff sent Ms. Lee an e-mail further documenting the discrimination she was forced to endure which included Rodriguez regularly and openly calling her a "Nigger" at work. Moreover, Plaintiff substantiated her allegations with the name of witnesses who overheard Rodriguez's racist remarks.

74. In response, on February 28, 2025, Ms. Lee told Plaintiff, that she had not previously complained of discrimination and that "Valentino takes discrimination complaints extremely seriously." Ms. Lee had also suddenly changed her mind about revealing the results of

the investigation and informed Plaintiff that Rodriguez was no longer employed by Valentino and consequently would not be able to take any action against Rodriguez.

75. Plaintiff replied to Ms. Lee's email by specifically quoting allegations from her February 14, 2025 formal complaint regarding Rodriguez's discriminatory conduct. Additionally, Plaintiff reported that Rodriguez also subjected Ms. Semper to similar racially charged remarks and references.

## FIRST CLAIM FOR RELIEF AGAINST DEFENDANT
*(Discrimination in Violation of 42 U.S.C. § 1981)*

76. Plaintiff repeats, reiterates, and realleges each and every allegation set forth above with the same force and effect as if more fully set forth herein.

77. Defendant, through its agents, as described above, discriminated against Plaintiff on the basis of her race in violation of 42 U.S.C. § 1981 by subjecting her to adverse treatment, including but not limited to, discriminatory treatment, hostile work environment, and ultimately constructive discharge.

78. As described above, Defendant created, fostered, condoned, accepted, ratified, and/or negligently failed to prevent a discriminatory environment that denied Plaintiff the same terms, conditions, and privileges of employment as her non-minority counterparts.

79. As a direct and proximate result of Defendant's unlawful discriminatory conduct in violation of 42 U.S.C. § 1981, Plaintiff has suffered, and continues to suffer, economic loss, for which she is entitled to an award of monetary damages and other relief.

80. As a direct and proximate result of Defendant's unlawful discriminatory conduct in violation of 42 U.S.C. § 1981, Plaintiff has suffered, and continues to suffer, severe mental anguish and emotional distress, including but not limited to, depression, anxiety, stress, loss of self-esteem

and self-confidence, and emotional pain and suffering, for which she is entitled to an award of monetary damages and other relief.

81. Defendant's unlawful discriminatory actions constitute malicious, willful, and wanton violations of 42 U.S.C. § 1981, for which Plaintiff is entitled to an award of punitive damages.

## SECOND CLAIM FOR RELIEF AGAINST DEFENDANT
*(Retaliation in Violation of 42 U.S.C. § 1981)*

82. Plaintiff repeats, reiterates, and realleges each and every allegation set forth above with the same force and effect as if more fully set forth herein.

83. 42 U.S.C. § 1981 prohibits employers from retaliating against employees who engage in activity protected by the statute, including opposing discriminatory practices or assisting in the enforcement of rights guaranteed by Section 1981.

84. As set forth above, Defendant, through its agents, retaliated against Plaintiff by subjecting her to increased scrutiny, hostile treatment, and ultimately forcing her constructive discharge because Plaintiff opposed discriminatory practices and asserted her protected rights under Section 1981.

85. As a direct and proximate result of Defendant's unlawful retaliatory conduct in violation of Section 1981, Plaintiff has suffered economic loss, and continues to suffer, for which she is entitled to an award of monetary damages.

86. As a direct and proximate result of Defendant's retaliatory conduct in violation of Section 1981, Plaintiff has suffered, and continues to suffer, severe mental anguish and emotional distress, including but not limited to, depression, anxiety, stress, loss of self-esteem and self-confidence, and emotional pain and suffering, for which she is entitled to an award of monetary damages and other relief.

87. Defendant's unlawful retaliatory actions constitute malicious, willful, and wanton violations of Section 1981, for which Plaintiff is entitled to an award of punitive damages.

## THIRD CLAIM FOR RELIEF AGAINST DEFENDANT
*(Race Discrimination in Violation of the NYSHRL)*

88. Plaintiff hereby repeats, reiterates, and realleges each and every allegation set forth above with the same force and effect as if more fully set forth herein.

89. The NYSHRL prohibits discrimination in the terms, conditions, and privileges of employment based on an individual's race and minority status.

90. Defendant, through its agents, as described above, discriminated against Plaintiff in violation of the NYSHRL by subjecting her to disparate treatment, hostile work environment, and ultimately constructive discharge on the basis of her race and minority status.

91. Defendant further subjected Plaintiff to discriminatory treatment by systematically targeting her as a Black female employee, while openly using racial slurs and derogatory language.

92. As a direct and proximate result of Defendant's unlawful discriminatory conduct in violation of the NYSHRL, Plaintiff has suffered economic losses, and continues to suffer such losses, for which she is entitled to an award of monetary damages.

93. As a direct and proximate result of Defendant's unlawful discriminatory conduct in violation of the NYSHRL, Plaintiff has suffered, and continues to suffer, severe mental anguish and emotional distress, including, but not limited to, depression, anxiety, stress, loss of self-esteem and self-confidence, and emotional pain and suffering, for which she is entitled to an award of monetary damages and other relief.

**FOURTH CLAIM FOR RELIEF AGAINST DEFENDANT**
*(Retaliation in Violation of the NYSHRL)*

94. Plaintiff repeats, reiterates, and realleges each and every allegation set forth above with the same force and effect as if more fully set forth herein.

95. Plaintiff engaged in protected activity under the NYSHRL by reporting the pervasive racial hostility in the workplace to HR, submitting a formal complaint about discriminatory treatment on February 14, 2025.

96. Defendant, through its agents, as described above, retaliated against Plaintiff for engaging in protected activity by intensifying discriminatory treatment, subjecting her to increased scrutiny and hostile treatment, and ultimately forcing her constructive discharge on February 20, 2025.

97. As a direct and proximate result of Defendant's unlawful retaliatory conduct in violation of the NYSHRL, Plaintiff has suffered economic losses, and continues to suffer such losses, for which she is entitled to an award of monetary damages.

98. As a direct and proximate result of Defendant's conduct in violation of the NYSHRL, Plaintiff has suffered, and continues to suffer, severe mental anguish and emotional distress, including, but not limited to, depression, anxiety, stress, loss of self-esteem and self-confidence, and emotional pain and suffering, for which she is entitled to an award of monetary damages and other relief.

**FIFTH CLAIM FOR RELIEF AGAINST DEFENDANT**
*(Race Discrimination in Violation of the NYCHRL)*

99. Plaintiff repeats, reiterates, and realleges each and every allegation set forth above with the same force and effect as if more fully set forth herein.

100. Defendant, through its agents, as described above, discriminated against Plaintiff in violation of the NYCHRL by subjecting her to disparate treatment and a hostile work environment based on her race and minority status, including systematically targeting her with racial slurs and derogatory language, and ultimately forcing her constructive discharge.

101. As a direct and proximate result of Defendant's conduct in violation of the NYCHRL, Plaintiff has suffered, and continues to suffer, severe mental anguish and emotional distress, including, but not limited to, depression, anxiety, stress, loss of self-esteem and self-confidence, and emotional pain and suffering, for which she is entitled to an award of monetary damages and other relief.

### SIXTH CLAIM FOR RELIEF AGAINST DEFENDANT
*(Retaliation in Violation of the NYCHRL)*

102. Plaintiff repeats, reiterates, and realleges each and every allegation set forth above with the same force and effect as if more fully set forth herein.

103. Plaintiff engaged in protected activity under the NYCHRL by reporting pervasive racial hostility in the workplace to HR, submitting a formal complaint about discriminatory treatment on February 14, 2025.

104. Defendant retaliated against Plaintiff for engaging in protected activity by intensifying discriminatory treatment, subjecting her to increased scrutiny and hostile treatment, and ultimately forcing her constructive ge on February 20, 2025.

105. As a direct and proximate result of Defendant's unlawful retaliatory conduct in violation of the NYCHRL, Plaintiff has suffered economic losses, and continues to suffer such losses, for which she is entitled to an award of monetary damages.

106. As a direct and proximate result of Defendant's conduct in violation of the NYCHRL, Plaintiff has suffered, and continues to suffer, severe mental anguish and emotional

distress, including, but not limited to, depression, anxiety, stress, loss of self-esteem and self-confidence, and emotional pain and suffering, for which she is entitled to an award of monetary damages and other relief.

## DEMAND FOR A JURY TRIAL

107. Pursuant to FRCP 38(b), Plaintiff demands a trial by jury in this action.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff demands judgment against Defendant as follows:

a. A judgment declaring that the practices complained of herein are unlawful and in violation of the aforementioned United States and New York State laws;

b. Preliminary and permanent injunctions against Defendant and its officers, owners, agents, successors, employees, representatives, and any and all persons acting in concert with them, from engaging in each of the unlawful practices, policies, customs, and usages set forth herein;

c. An award of damages in an amount to be determined at trial, plus prejudgment interest, to compensate Plaintiff for all monetary and/or economic damages;

d. An award of damages in an amount to be determined at trial, plus prejudgment interest, to compensate Plaintiff for all non-monetary and/or compensatory damages, including, but not limited to, compensation for her mental anguish and emotional distress, humiliation, depression, embarrassment, stress and anxiety, loss of self-esteem, self-confidence and personal dignity, and emotional pain and suffering and any other physical or mental injuries;

e. An award of damages for any and all other monetary and/or non-monetary losses suffered by Plaintiff in an amount to be determined at trial, plus prejudgment interest;

f. An award of punitive damages;

      g.      An award of costs that Plaintiff has incurred in this action, as well as Plaintiff's reasonable attorneys' fees to the fullest extent permitted by law; and

      h.      Such other and further relief as the Court may deem just and proper.

Dated: New York, New York
         March 4, 2026

                                        Respectfully submitted,

                                        **JOSEPH & NORINSBERG, LLC**

By: _____
       DIEGO O. BARROS, ESQ.
       825 Third Avenue, Suite 2100
       New York, New York 10022
       Tel.: (347) 277-7327
       Fax: (212) 656-1889
       E-mail: diego@norinsberglaw.com
       *Attorneys for Plaintiff*